**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Jolene C., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 20 CV 50219 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jolene C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her disability insurance benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

## I. Background[1]

This Social Security disability benefits case, which has been ongoing for nearly a decade, is before the Court for a third time. In July 2001, Plaintiff received a lumbar epidural anesthetic injection for labor and delivery and suffered numbness from her right inner thigh to her right inner calf muscles. R. 254. In September 2011, Plaintiff submitted her application for disability

---

[1] The following background includes an overview of the case and a description of the most recent hearing. The medical records and other evidence have been set out in more detail in the two previous district court opinions. *See Jolene C. v. Saul*, No. 18 CV 50015, 2019 WL 3037070 (N.D. Ill. July 11, 2019); *Croffoot v. Colvin*, No. 14 CV 50159, 2016 WL 1407736 (N.D. Ill. Apr. 11, 2016).

insurance benefits, alleging disability since May 1, 2007 with a date last insured of June 30, 2012.[2] She alleged permanent nerve damage to her right leg with loss of use, spine damage, and depression. R. 59, 114.

In October 2011, Plaintiff underwent a consultative examination by Dr. Arcadio Dumpit. He noted that she had a wobbly gait, positive straight leg raising, and difficulty walking heel toe. Dr. Dumpit concluded that Plaintiff's impairments affected her walking, prolonged standing, and continuous sitting, as well as some of her basic activities of daily living. He recommended the use of assistive devices for balance and confidence. R. 422-26.

In January 2013, an Administrative Law Judge ("ALJ") held a hearing to review the Commissioner's denial of Plaintiff's request for benefits. Plaintiff testified that she still felt numbness following her epidural 12 years prior, could only sit without moving for 15-25 minutes, could only stand for less time than she could sit, and had fallen at least three times a day every day since 2009. She testified that she did not use a cane and that she could complete household activities with limitations. She testified that if she were to work full-time, she would miss at least 3 days a week due to her pain. R. 29-35.

In March 2013, the ALJ issued his decision that Plaintiff was not disabled. R. 6. Plaintiff filed a complaint in the U.S. District Court for the Northern District of Illinois in July 2014 seeking reversal or remand of the ALJ's decision. Plaintiff made three arguments, but the court focused primarily on her argument that the ALJ had improperly analyzed whether she met or medically equaled a listing.[3] In April 2016, then Magistrate Judge Iain Johnston issued an opinion remanding

---

[2] Plaintiff must establish disability between the alleged onset date and on or before the date she was last insured to be entitled to a period of disability insurance benefits. This timeframe will be referred to as "the relevant period."

[3] Plaintiff had argued that the ALJ should have analyzed her impairments under Listings 1.04(A) for disorders of the spine and 1.02(A) for major dysfunction of a joint. 20 C.F.R. Pt. 404, Subpt. P. App. 1 §§ 1.04(A), 1.02(A).

the decision primarily on the basis that the ALJ did not adequately conduct a listing analysis. He recommended that an expert be obtained on remand to address the listing issue. *Croffoot*, 2016 WL 1407736, at *6.

Pursuant to the remand, the ALJ conducted a second hearing in October 2016. The ALJ heard testimony from Plaintiff, medical expert ("ME") Dr. Steven Golub, and a vocational expert ("VE"). Plaintiff testified that the longest that she could function at once without having to stop to rest her leg was 10 minutes. She stated she could only do a household activity for 10-15 minutes before she had to sit, and that she could only sit for 15-20 minutes before she had to stand up. To get through sitting for a longer period, she needed to move around, stretch her leg, and fidget. She testified that she did not use a cane because no one had recommended one to her. When asked about the gaps in her medical treatment, Plaintiff responded that, despite having insurance, money was "kind of tight" and her doctors told her that "there's nothing they could do." She stated that Dr. Jelinek's only treatment recommendation was physical therapy. R. 754-63.

Dr. Golub, the medical expert at the hearing, testified that he believed Plaintiff satisfied the requirements of Listing 1.04(A). After the ALJ brought Dr. Golub's attention to other evidence in the record, Dr. Golub began to express doubt about his conclusion. Dr. Golub ultimately stated that he believed a more recent clinical examination was required and, without that information, did not believe that Plaintiff met or equaled any of the listings. R. 773-78. Following the hearing, Plaintiff underwent a neurologic consultative examination performed by Dr. Rakesh Garg in November 2016. Dr. Garg concluded that the neurological examination was "completely normal" and did not find any focal neurological deficit indicating either a neuropathy or a lumbosacral radiculitis. He also found that Plaintiff did not require a cane or crutches. R. 1010.

In March 2017, the same ALJ denied Plaintiff's request for benefits. R. 722. The ALJ assigned substantial weight to the opinions of Dr. Golub and Dr. Garg and minimal weight to the 2011 consultative examination by Dr. Dumpit. The ALJ determined that Plaintiff did not meet a listing and that when considering the residual functional capacity ("RFC"), objective findings failed to support Plaintiff's allegations of disabling symptoms and limitations. The ALJ relied in part on the gaps in treatment for Plaintiff's impairment and the November 2016 consultative neurological examination. R. 730-734.

Plaintiff filed another complaint in this Court in January 2018, seeking review of the ALJ's decision and arguing in large part that the ALJ again erred in not properly evaluating whether she met a listing during the relevant period. This Court issued an opinion in July 2019 remanding the decision on the basis that the ALJ failed to explain why or how medical evaluations conducted after the date last insured were relevant to whether Plaintiff met a listing during the relevant period. The Court stated that, on remand, the ALJ must specifically address whether Plaintiff met a listing during the relevant period. The Court also directed the ALJ to adequately discuss the reasons Plaintiff offered to substantiate the gaps in her medical treatment and thoroughly explain which symptoms she found consistent or inconsistent with the record evidence and how her evaluation of Plaintiff's symptoms led to her conclusion. *Jolene C.*, 2019 WL 3037070 at *7-8.

Pursuant to the second remand, a different ALJ conducted a third hearing in February 2020, hearing testimony from a new ME, Dr. Arthur Lorber, and VE, Richard Fisher.[4] Dr. Lorber testified that there was no evidence that Plaintiff satisfied the Listing 1.04A requirements during the relevant period as well as leading up to the relevant period. He explained that his conclusion

---

[4] Plaintiff declined to testify at this hearing and opted to stand on her prior testimony from the first two hearings. R. 1055-56. A brief summary of that testimony was provided above. Longer summaries can be found in the first two district court opinions. *See Jolene C.*, 2019 WL 3037070, at *1; *Croffoot*, 2016 WL 1407736, at *1-2.

was based on the imaging studies that were essentially normal, the electrodiagnostic testing that was not described as demonstrating a specific radiculopathy, Plaintiff's significant activity level, and the lack of muscle atrophy. R. 1058-64. Dr. Lorber also discussed the evidence relating to Plaintiff's right leg issues. He stated that, during the relevant period, he did not find evidence of any significant pathology involving Plaintiff's knee and cited several episodes of activity that were "incompatible with a severe malfunction of her knee." R. 1065-66. Dr. Lorber testified that it was his medical opinion that, during the relevant period, Plaintiff did not meet or equal Listing 1.02A or Listing 4.11. R. 1066. Regarding functional limitations, Dr. Lorber testified that the evidence did not demonstrate a need for any limitations or restrictions. R. 1071-72.

The ALJ also heard testimony from the VE. First, the VE was asked to assume a hypothetical individual with Plaintiff's age, education, and work history who could work at the light exertional level; could not climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to wetness, vibration, and hazards, including dangerous moving machinery and unprotected heights. The VE testified that such an individual could perform Plaintiff's past jobs of a gate guard, cook, and stock clerk, and could perform other work as a mail clerk and photographic finisher. The ALJ's second hypothetical added the limitation of sedentary work, to which the VE testified it would not be possible to perform any of Plaintiff's past jobs, but such an individual could perform other work such as a telephone quote clerk, order clerk, or charge account clerk. The third hypothetical involved an individual who would be off-task 15% of the time or more. The VE testified that 15% off-task time is the maximum allowed, and over 15% would not allow for any work. R. 1092-95.

In February 2020, the ALJ denied Plaintiff's request for benefits. R. 1017. She found Plaintiff had the following severe impairments: right knee cysts, complications from childbirth

epidural, and mild obesity. R. 1022. The ALJ determined Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. R. 1024. She concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; and avoid concentrated exposure to wetness, vibration, or hazards that include dangerous moving machinery and unprotected heights. R. 1025. The ALJ found that there were a significant number of jobs in the national economy that Plaintiff could have performed. R. 1032.

In June 2020, Plaintiff filed a complaint with the Court requesting judicial review of the Commissioner's adverse decision.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id*. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when

adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5 (N.D. Ill. Oct. 29, 2014).

### III. Discussion

On this third go-around before the Court, Plaintiff does not argue that she met or equaled a listing as she did in her previous motions. Rather, Plaintiff raises the following three arguments: (1) the ALJ erred in assessing Plaintiff's RFC by failing to explain why she did not credit Plaintiff's alleged inability to sit for extended periods; (2) the ALJ erred in ignoring favorable VE testimony demonstrating that Plaintiff's off-task time would preclude her from competitive employment; and (3) the ALJ erred in evaluating Plaintiff's subjective allegations that addressed the intensity, persistence, and limiting effects of her pain and symptoms. The Court will address each in turn.

*A. Plaintiff's RFC*

The ALJ found that Plaintiff retained the RFC for sedentary work, meaning that she could stand and walk for 2 hours and sit for 6 hours in an 8-hour workday. Plaintiff argues that the ALJ failed to explain why she credited Plaintiff's alleged inability to stand and walk for extended periods, but not her alleged inability to sit for extended periods. Pl.'s Br. at 4, Dkt. 12. Plaintiff asserts that her need for a greater sitting limitation is supported by the following evidence: (1) her prior testimony that she can only sit for 15-20 minutes before she has to get up, and (2) treatment notes from two appointments in July 2001 describing decreased pinprick sensation at the L3-L4 dermatome, potential lumbar plexopathy, and possible L2-3-4 radiculopathy. She also points to an online article titled "Painful Lumbar Plexopathy" and a webpage from the Mayo Clinic addressing

radiculopathy as evidence that plexopathy and radiculopathy can cause pain in the torso, pelvis, lower back, buttocks, and legs. *Id*. at 5-6; *see* R. 254, 260. Plaintiff contends that the ALJ's error was not harmless because, had the ALJ determined her ability to sit was as limited as her ability to stand and walk, the ALJ would have had to find Plaintiff was disabled. Pl.'s Br. at 6, Dkt. 12.

With respect to Plaintiff's argument that the diagnoses of possible plexopathy and radiculopathy support her inability to sit for extended periods, those diagnoses alone are insufficient. "It was [the plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018); *see Perez v. Astrue*, 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012) ("A diagnoses, or symptom for that matter, does not automatically translate to a limitation or impairment and simply listing them proves nothing."). Here, while Plaintiff points to diagnoses of potential plexopathy and possible radiculopathy[5] (both of which were made four years before the alleged onset date of disability), Plaintiff points to no medical evidence that as a result of these conditions she has difficulty sitting for extended periods.

While Plaintiff points to her own testimony that she could only sit for 15-20 minutes at a time before she had to stand up, the ALJ pointed to several instances in the record where Plaintiff discussed her symptomatology but did not list an inability to sit. For example, in her function report from the relevant period, Plaintiff did not list "sitting" as an area affected by her conditions. R. 1025. Additionally, during an October 2011 consultative examination performed by Dr. Dumpit, she reported difficulties with walking, kneeling, and climbing up and down stairs. She stated that, if she walks further than 100 feet, her legs contract and she can fall. However, she did not complain of difficulty sitting. R. 1026-27. Moreover, this Court's review of the record reveals

---

[5] Dr. Lorber testified however, the electrodiagnostic testing was not described as demonstrating a specific radiculopathy. R. 1063.

that, while Plaintiff periodically complained to her physicians of difficulty walking, no medical records contain similar complaints of difficulty sitting for extended periods of time. In fact, she reported to her physician that her pain decreased with sitting. R. 304, 402.

Contrary to Plaintiff's assertion, the ALJ did not fail to explain her assessment of the sitting limitation in the RFC. Social Security Ruling 96-8p states: "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996). "Although the RFC assessment is a function-by-function assessment, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (internal quotations and citation omitted). Here, the ALJ did engage in a narrative discussion of record evidence. With regard to Plaintiff's alleged sitting restrictions, the ALJ recognized that consultative examiner Dr. Dumpit opined that Plaintiff was restricted in continuous sitting. The ALJ also noted, however, that Dr. Dumpit did not offer any specific restrictions. After considering the evidence, the ALJ assigned little weight to Dr. Dumpit's assessment on the basis that his opinion was vague and inconsistent with the rest of the medical evidence of record.[6] R. 1026-27.

The ALJ also discussed the opinions of Dr. Lorber, who opined that during the relevant period Plaintiff did not have any severe medically determinable impairments. R. 1063. Regarding functional limitations, Dr. Lorber testified that neither exertional nor postural functional limitations were supported because the evidence did not demonstrate a need for them. R. 1071-72. The ALJ accorded Dr. Lorber's opinion great weight.[7] R. 1031.

---

[6] Plaintiff does not contest the weight assigned to Dr. Dumpit's opinion.
[7] Plaintiff does not contest the weight assigned to Dr. Lorber's opinion.

Furthermore, Plaintiff has not offered any opinion from a physician recommending sitting limitations greater than those found by the ALJ. This is critical given that the Seventh Circuit has stated that "when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004); *see Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding the fact that no doctor offered any opinion setting sitting limits greater than those set by the ALJ a "fundamental problem"); *Hostetter v. Saul*, 841 F. App'x 983, 987 (7th Cir. 2021) (finding the ALJ's determination that the plaintiff had the RFC to perform sedentary work with restrictions supported by the fact that none of the plaintiff's doctors ever suggested that the plaintiff was unable to do sedentary work); *Zoch v. Saul*, 981 F.3d 597, 601-02 (7th Cir. 2020) (finding persuasive that, aside from one physician whose opinion was reasonably rejected, no other physician during the relevant period opined that the plaintiff could not handle sedentary work); *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (finding no error where no doctor recommended any limitations based on the plaintiff's condition). Accordingly, the Court finds no error in the ALJ's assessment of Plaintiff's sitting limitation in the RFC.

*B. Vocational expert testimony*

At the most recent hearing, the ALJ asked the VE whether there would be any work available to an individual who was off-task 15% or more of the workday.[8] The VE responded that

---

[8] The ALJ does not explain where she derived the 15% number, but the record shows that this came into consideration at the previous hearings. At the hearing in 2013, Plaintiff testified that she could sit without moving at all for 15-25 minutes, R. 32, and the first ALJ decision discussed that testimony, R. 13. At the 2016 hearing, the ALJ and Plaintiff's counsel discussed that prior testimony, as well. R. 749, 761. Later in the hearing, the ME, Dr. Golub, testified that there was no evidence to support the need for Plaintiff to move away from the workstation every 15-20 minutes. R. 780. At the end of that hearing, the ALJ included Plaintiff's testimony in a hypothetical he posed to the VE. The ALJ asked whether a claimant needing to get up every 15-20 minutes and move away from the workstation for 2-3 minutes at a time would be inconsistent with satisfying the on-task requirement for sedentary, unskilled jobs. The VE testified that such a claimant would not be able to remain on-task for the requisite 85% of the workday. R.

15% off-task time allows for work, but more than 15% does not. R. 1093-94. The ALJ ultimately did not include any off-task time in her decision. Plaintiff argues that the ALJ erred by ignoring testimony from the VE that was favorable to her. Pl.'s Br. at 6, Dkt. 12. She contends that, despite soliciting testimony from the VE that a hypothetical individual who would be off-task greater than 15% of the workday would be precluded from competitive employment, the ALJ did not discuss the testimony in her decision and did not explain why she ultimately did not find this applied to Plaintiff. *Id*. Plaintiff asserts that an ALJ errs when she solicits VE testimony containing a functional restriction that, if included in the RFC, would be favorable to the claimant and then fails to discuss that testimony. She cites several cases to support this argument, which are discussed further below. *Id*.

The Commissioner argues that the ALJ presented a number of hypothetical questions to the VE addressing various scenarios, but the ALJ was only required to accommodate limitations supported by the evidence. Def.'s Resp. at 11-12, Dkt. 15. He asserts that, while questioning the VE at the hearing, the ALJ had not yet determined how she would weigh the evidence or what the RFC would be. *Id*. at 14. He explains that the ALJ posed a series of hypothetical questions to the VE in order to develop a record that would provide sufficient evidence for her to make a decision about the availability of jobs regardless of what restrictions she ultimately concluded should be included in the RFC finding. *Id*.

Plaintiff's argument that the ALJ erred by failing to discuss testimony about a functional limitation that would have been work-preclusive is unavailing. None of the cases Plaintiff cites stands for the proposition that there is a *per se* rule that an ALJ automatically commits reversible error when she fails to address "favorable" testimony given by a VE. Rather, in the cases Plaintiff

---

793. The most recent ALJ decision also referenced Dr. Golub's testimony from the 2016 hearing. R. 1029.

cites, the courts found that the ALJ erred in failing to discuss VE testimony about a functional limitation that would have been work-preclusive because the ALJ failed to properly account for the evidence in the record relating to that limitation. *See Stephen M. v. Berryhill*, 2019 WL 2225986, *6 (N.D. Ill. 2019); *Morton v. Berryhill*, 2018 WL 246200, *6 (N.D. Ill. 2018); *Heuschmidt v. Colvin*, 2015 WL 7710368, *9 (N.D. Ill. 2015); *Bailey v. Barnhart*, 432 F.Supp. 822, 840 (N.D. Ill. 2006); *Sayles v. Barnhart*, 2001 WL 1568850, *9 (N.D. Ill. 2001). In other words, it was the ALJ's mishandling of the record evidence, not the ALJ's failure to address "favorable" testimony from the VE, that necessitated remand in those cases.

Here, Plaintiff merely complains that the ALJ did not provide an explanation for not making a particular finding; she does not assert that the ALJ failed to account for some evidence in the record relating to that limitation. In fact, aside from Plaintiff's testimony about only being able to sit for 15-25 minutes, the record is devoid of evidence supporting an off-task restriction. As set forth above, the ALJ adequately addressed the lack of evidence supporting more severe sitting restrictions. Therefore, the ALJ did not fail to properly account for evidence in the record relating to such a restriction.

Moreover, the Seventh Circuit has stated that, when an ALJ omits from the RFC a limitation that was presented in a hypothetical to the VE, there is no error if the hypothetical posed a more restrictive limitation than what was supported by the record. *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir.), *cert. denied sub nom. Chongnengwt Vang v. Saul*, 141 S. Ct. 409, 208 L. Ed. 2d 116 (2020). Relatedly, courts in this circuit find that, if an ALJ ultimately determines that a hypothetical posed to a VE does not accurately reflect the plaintiff's limitations, the ALJ is not required to discuss the testimony or explain the reasoning for rejecting it. *See, e.g.*, *Hodges v. Barnhart*, 509 F. Supp. 2d 726, 736 (N.D. Ill. 2007); *Virden v. Colvin*, No. 14-CV-1219, 2015 WL

5598810, *13-14 (C.D. Ill. Sept. 22, 2015); *Wiszowaty v. Astrue*, 861 F. Supp. 2d 924, 948 (N.D. Ind. 2012). The ALJ in this case ultimately decided that the off-task restriction did not accurately reflect Plaintiff's sitting limitations, as evidenced by her assignment of little weight to Dr. Dumpit's opinion (the only physician who discussed her sitting ability) and the RFC assessment indicating that Plaintiff was capable of sedentary work. Therefore, the ALJ's lack of discussion about the VE's testimony concerning off-task time does not warrant remand.

### C. Plaintiff's subjective allegations

Plaintiff argues that the ALJ erred in finding that Plaintiff's subjective symptom allegations were not consistent with the evidence. Pl.'s Br. at 7, Dkt. 12. An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009). The ALJ listed a number of reasons in support of her symptoms evaluation including that: the medical evidence from the relevant period did not support Plaintiff's allegations; since the alleged onset date no diagnostic imaging provided an explanation for Plaintiff's alleged symptoms; there were gaps in treatment during the relevant period in relation to Plaintiff's alleged symptoms; consultative examiner Dr. Dumpit's opinion regarding Plaintiff's symptoms was vague and not supported by other medical evidence; Plaintiff did not receive pain

management or physical therapy treatment other than for one month in 2011; and Plaintiff was never seen by a doctor in relation to a fall due to knee issues during the relevant period. R. 1027-28. Plaintiff does not contest all of the bases used by the ALJ to support her symptoms evaluation; instead, she limits her arguments as set forth below.

*i. Explanations for the gaps in treatment*

One of the reasons given by the ALJ for discounting Plaintiff's testimony was the gaps in treatment. On remand, the ALJ was instructed to give additional consideration to Plaintiff's explanations for the gaps in treatment during the relevant period. The Seventh Circuit has stated that, although a history of sporadic treatment can undermine a plaintiff's subjective allegations, an ALJ must consider the possible reasons for the lack of treatment. *Deborah M. v. Saul*, 994 F.3d 785, 790 (7th Cir. 2021). Examples of "good reasons" may include an inability to afford treatment or ineffectiveness of further treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). Plaintiff argues that the ALJ improperly rejected her explanations.

*a. Financial concerns*

One of Plaintiff's explanations for the gaps in treatment during the relevant period was that, despite having health insurance, money was "kind of tight." R. 756. The ALJ rejected Plaintiff's explanation for two reasons: (1) because, while Plaintiff asserted she was unable to afford treatment for her allegedly disabling medical impairments, she did receive and pay for other medical treatment; and (2) because the record does not reflect Plaintiff's concern with financial matters affecting her treatment. R. 1027. Plaintiff argues that her ability to afford certain medical treatment did not establish that she could have afforded treatment the ALJ believed she should have pursued. She further challenges that the ALJ did not identify the type or cost of treatment she expected Plaintiff to obtain. Plaintiff also maintains that she was not required to disclose financial

concerns to her doctors in order for those concerns to be valid. Pl.'s Br. at 7-8, Dkt. 12. The Commissioner responds that the ALJ was not obligated to accept Plaintiff's explanations nor to identify specific treatment Plaintiff should have pursued and the cost of that treatment. Def.'s Resp. at 6-7, Dkt. 15.

The ALJ considered Plaintiff's financial explanation for the gaps in treatment but was not convinced. The record reveals that while Plaintiff's visits for leg pain were sporadic, Plaintiff did receive medical care for numerous other issues during the relevant period. For example, she sought treatment for itchy eyes, cough and congestion, bug bites, and epigastric pain. R. 267, 286, 289, 292, 314, 322. The record also fails to corroborate Plaintiff's testimony about financial concerns in any way. The ALJ could rationally conclude that the record evidence did not adequately provide support for Plaintiff's financial explanation for the gaps in treatment. *See Morrison*, 806 F. App'x at 474 (finding that the ALJ could properly consider the fact that, despite his financial circumstances, the plaintiff still was able to follow up with other medical services); *Higdon v. Astrue*, No. CIV.08-776-JPG-PMF, 2010 WL 1963429, at *7 (S.D. Ill. Apr. 22, 2010), *report and recommendation adopted*, No. 08-CV-776-JPG, 2010 WL 1963428 (S.D. Ill. May 14, 2010) ("The administrative record indicates that some level of care was available to [the plaintiff] despite his financial circumstances, even if he was not able to purchase specialty medical services. The ALJ could rationally conclude that the record did not adequately explain the [sporadic medical care].""). Accordingly, the ALJ did not improperly reject Plaintiff's explanation.

### b. Lack of treatment options

Another explanation Plaintiff provided for her gaps in treatment was that she was told there was nothing more that could be done for her. The ALJ considered this explanation but found that it was not supported by the record. Specifically, the ALJ pointed to a record from Plaintiff's

treating physician wherein he recommended physical therapy for her leg pain. He also recommended an orthopedic consultation if the pain continued. R. 264. Further, the record shows that Plaintiff did benefit from the physical therapy. R. 696. The record lacks any evidence corroborating Plaintiff's assertion that her treating physicians struggled to find a treatment for her. Based on the above information, the ALJ could reasonably conclude that Plaintiff's explanation regarding a lack of treatment options was not supported. *See Luigi B. v. Saul*, No. 18 CV 7392, 2021 WL 83508, at *13 (N.D. Ill. Jan. 11, 2021) ("It may be, for example, that there is no treatment reasonably available to the claimant to address the conditions that purportedly give rise to his or her complaints. . . But that does not appear to be the case here. Claimant obtained treatment for the medical conditions he raised.") (internal citation omitted).

### c. Emergency room visit in 2012

In discussing Plaintiff's gaps in treatment, the ALJ noted that although she reported to the emergency room in 2012 after a fall, she did not report knee or back pain. R. 1028. Plaintiff argues that she should not have been expected to discuss symptoms or impairments that were unrelated to the injury for which she sought treatment. Pl.'s Br. at 8-9, Dkt. 12. The Commissioner argues that Plaintiff's argument proves the ALJ's point: Plaintiff did not fall because of any knee problems – she fell because she slipped on the curb while walking in the dark. As such, the 2012 emergency room visit is not supportive of Plaintiff's allegation of falls due to leg or back pain. Def.'s Resp. at 4, Dkt. 15. The ALJ did not err in relying on this visit to support her conclusion that Plaintiff's gaps in treatment did not support the alleged severity of her symptoms.

In sum, the ALJ properly considered Plaintiff's explanations for the gaps in treatment as previously ordered by this Court. Because the ALJ "pointed to specific findings and evidence to support her credibility determination" on this matter, it is not the Court's place to second-guess it.

*Morrison*, 806 F. App'x at 474 (citing *Murphy*, 759 F.3d at 815-16 (7th Cir. 2014), as amended (Aug. 20, 2014) (noting credibility determination is patently wrong if it "lacks any explanation or support")). Since the ALJ's consideration and rejection of Plaintiff's explanations for the gaps in treatment did not lack any explanation or support, it was not patently wrong and thus a remand is not warranted.

*ii. Activities of daily living*

Plaintiff argues that the ALJ failed to explain if or how she considered Plaintiff's activities of daily living and the limitations associated with those activities when she evaluated Plaintiff's subjective allegations. Pl.'s Br. at 9-10, Dkt. 12. For example, Plaintiff points to her testimony that when she was cooking, cleaning, grocery shopping, or doing laundry, she took frequent breaks in order to sit to relieve pain. *Id*. at 9. The Commissioner argues that the ALJ was not required to discuss every factor listed by the regulation but, rather, was obliged to explain what evidence led to her conclusion, which she did. The Commissioner also asserts that Plaintiff does not explain how her activities of daily living prove she had work-related limitations greater than the ALJ imposed. Def.'s Resp. at 9, Dkt. 15.

The Seventh Circuit addressed an argument similar to the one Plaintiff makes here in *Gedatus v. Saul*, 994 F.3d 893 (7th Cir. 2021). There, the plaintiff argued that the ALJ did not analyze her activities of daily living and failed to consider that she performed tasks slowly, with breaks and help. *Id*. at 903. The court found that the ALJ's discussion of the plaintiff's daily activities showed he was aware of them when he considered her symptom allegations and, therefore, contrary to the plaintiff's claim, they were analyzed. *Id*. Regarding the argument that the ALJ failed to consider that she performed various tasks with limitations, the court explained that an ALJ need not discuss every detail related to every factor and that "the presence of

contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Id*. (citing *Pepper*, 712 F.3d at 362); *see Deborah M.*, 994 F.3d at 791 ("[T]he ALJ's failure to mention a few limitations on some of Plaintiff's activities, if wrong at all, was not so 'patently wrong' as to warrant reversal."). In the instant case, the ALJ discussed many of Plaintiff's activities of daily living and several of her alleged limitations, including her testimony that she needs others to shop for her and that she cannot stand long enough to cook a meal. R. 729. Following the Seventh Circuit in *Gedatus*, the ALJ's discussion of Plaintiff's activities of daily living shows that she did indeed analyze them and that the ALJ was not required to "discuss every detail" related to Plaintiff's alleged limitations associated with those activities.

More importantly, the ALJ did take into consideration Plaintiff's pain and restrictions in daily activities when she assessed Plaintiff's RFC. The ALJ expressly stated that she considered Plaintiff's "pain complaints and reports of falls" in her decision to limit Plaintiff to work at the sedentary exertional level with additional functional limitations. R. 1031; *see Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) ("[T]he ALJ did not totally discount [the plaintiff's] testimony regarding how her pain affected her ability to perform certain activities, as evidenced by the ALJ's decision to limit [the plaintiff's] range of work to sedentary when assessing her residual functional capacity."); *see also Taylor v. Berryhill*, No. 17 C 9098, 2018 WL 5249234, at *7 (N.D. Ill. Oct. 22, 2018); *Spaulding v. Berryhill*, No. 16-CV-6298, 2017 WL 3922878, at *11 (N.D. Ill. Sept. 7, 2017). Therefore, the ALJ's assessment of her activities of daily living was not "patently wrong" and does not warrant remand.

*iii. Cane recommendation*

The ALJ found it inconsistent that, while Plaintiff testified that she was not using a cane because it had never been recommended to her, she had been advised one might help during her

consultative examination with Dr. Dumpit. R. 1028. Plaintiff argues that the ALJ made an impermissible assumption because, although Dr. Dumpit included the recommendation in his summary of the examination, there is no evidence that he advised Plaintiff to utilize an assistive device. Pl.'s Br. at 10-11, Dkt. 12; R. 754-55, 759. The Commissioner argues that, even if Plaintiff was not aware of the recommendation at the time of Dr. Dumpit's examination, she must have at least been aware of it when she cited it in court documents in 2014 and, yet, at the 2016 hearing she maintained no doctor had recommended using an assistive device. Def.'s Resp. at 8, Dkt. 15.[9]

It is not clear from the record whether Dr. Dumpit informed Plaintiff of his recommendation to use a cane. The ALJ's assumption thus appears to be improper speculation. Even so, the ALJ listed the other evidence she used to support her conclusion that Plaintiff's statements were inconsistent with the record, the majority of which Plaintiff has not challenged. R. 1027-28. The Court finds that, even without the single sentence at issue, the ALJ included sufficient evidence in her decision to support the conclusion that Plaintiff's subjective allegations were inconsistent with the medical evidence and other evidence in the record. *See Halsell*, 357 F. App'x at 722 ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.").

*iv. Regular and recurrent falls*

Plaintiff argues that the ALJ erred in finding that Plaintiff's allegations about regular and recurrent falls were inconsistent with record evidence based on her failure to seek emergency medical treatment and specify regular occurrences of falls to her treating physicians. Plaintiff asserts that the ALJ was not permitted to rely on her failure to seek emergency medical care as evidence that she was exaggerating her symptoms or pain. Plaintiff also contends that the record

---

[9] Plaintiff argues that since the ALJ did not utilize this explanation in her decision it is an impermissible *post hoc* rationalization.

reflects she did report knee weakness and falling throughout the relevant period. Pl.'s Br. at 11-12, Dkt. 12.

Although Plaintiff testified at the hearing in 2013 that she had fallen due to knee issues at least 3 times a day for the last 4 years, R. 31, her reports of these allegedly regularly occurring falls to her treating physicians are scarce during the relevant period. In October 2007, Plaintiff's physician wrote that Plaintiff "has times when she will just fall because the knee gives out on her." R. 326. In April 2010, Plaintiff complained to her physician of right knee pain, but did not report any falls. Notably, her knee examination was normal. R. 277. In April 2011, Plaintiff saw her physician to discuss her right knee and reported "a history of recurrent falls," although her knee examination was within normal limits. At this appointment her physician recommended physical therapy, which resulted in such significant improvement of her symptoms that she was discharged after one month. R. 264, 696. In short, the record reflects only two instances over the course of the relevant five-year period in which Plaintiff reported falling due to right knee pain or weakness.[10] Moreover, even on those two occasions she did not indicate to her treating physician that such falls occurred every day, let alone three times each day.

Plaintiff also argues that the ALJ improperly relied on Plaintiff's failure to seek emergency room treatment for falls to support her symptoms evaluation. The Court acknowledges that the Seventh Circuit has warned ALJs against relying on a plaintiff's failure to seek emergency medical care as evidence of the severity of a symptom or condition. *See Goins v. Colvin*, 764 F.3d 677, 679-80 (7th Cir. 2014); *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Accordingly, it was

---

[10] Plaintiff's brief points to two other falls during the relevant period. In September 2010, Plaintiff fell over a broom while sweeping after she slipped on a "spot that was somewhat moist." R. 270, 274. This is not consistent with falling due to knee issues and, therefore, does not support Plaintiff's argument. In October 2011, Plaintiff told consultative examiner Dr. Dumpit that her legs can stiffen up and give out, causing her to fall. R. 422. However, Dr. Dumpit was a consultative examiner, not Plaintiff's treating physician, so this does not contradict the ALJ's point.

improper for the ALJ to consider as evidence the fact that Plaintiff had not presented to the emergency room due to falling. Even so, as set forth above, the ALJ in this case discussed other appropriate evidence to support her assessment of Plaintiff's subjective allegations about regular and recurrent falls. Moreover, as explained earlier, the ALJ credited Plaintiff's testimony about falls in the RFC by limiting Plaintiff to sedentary work. R. 1031.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: May 27, 2021                    By: _Lisa A. C_____

                                      Lisa A. Jensen
                                      United States Magistrate Judge